J-A23011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: K.C., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C., SR. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 667 MDA 2021 |

Appeal from the Order Entered April 19, 2021
In the Court of Common Pleas of York County
Juvenile Division at CP-67-DP-0000139-2021

| | | |
|---|---|---|
| IN THE INT. OF: K.C., JR., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.C., SR. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 743 MDA 2021 |

Appeal from the Order Entered May 11, 2021
In the Court of Common Pleas of York County
Juvenile Division at CP-67-DP-0000139-2021

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: NOVEMBER 19, 2021**

In this consolidated appeal, K.C., Sr. (Father) appeals from the order adjudicating his minor son, K.C., Jr. (Child), dependent, as well as the order changing Child's concurrent permanency goal from reunification to placement with a subsidized permanent legal custodian (SPLC).  After careful review, we affirm the dependency finding but reverse the goal change.

---

[*] Former Justice specially assigned to the Superior Court.

Father and J.A.F. (Mother)[1] are the biological parents of Child, born March 25, 2021. On March 26, 2021, the York County Office of Children, Youth and Families (the Agency) filed an application for emergency protective custody. The Agency alleged:

1. [The Agency] has had extensive involvement with [Mother], as a minor. …

2. [The Agency] has also had extensive involvement with [Mother] and the siblings of this minor child since February 2013, due to ongoing parenting concerns and domestic violence.

. . .

4. Mother's parental rights as to those minor children … were involuntarily terminated on January 31, 2020.

. . .

6. Concerns were reported that [Father] appeared under the influence at the hospital when mother was admitted to give birth.

7. Following the minor child's birth, father continued to be intoxicated and appeared to pass out and the minor child was removed from him to return to the NICU.

8. Prior to the birth, hospital personnel reported concerns during the mother's prenatal visits that father left behind an empty alcohol bottle.

9. It was also reported that mother contracted Chlamydia on three occasions during her pregnancy; when antibiotics and treatment were recommended father asked hospital personnel whether he could continue to have sexual intercourse with mother despite the STI.

---

[1] Mother is not a party to this action and has not appealed the dependency determination.

10. Mother has significant cognitive delays and Intellectual Developmental Disabilities.

11. Mother has been the subject of domestic violence relationships in the past.

Application for Emergency Protective Custody, 3/26/21, at 3-4.

The juvenile court granted the Agency's application for protective custody on March 29, 2021. A shelter care hearing took place on April 7, 2021, after which the court ordered that Child remain in the Agency's custody. At that time, Child had been placed in foster care with his three half siblings and their adoptive parents.

On April 8, 2021, the Agency filed a dependency petition pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302, alleging Child was "without proper care or control" and "born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. 2511 [] within three years immediately preceding the date of birth of the child, and conduct of the parent poses a risk to the health, safety or welfare of the child." Dependency Petition, 4/8/21, at 3. The Agency also filed a motion for a finding of aggravated circumstances as to Mother (but not Father). On April 19, 2021, the court held a hearing on the dependency petition and motion for finding of aggravated circumstances. Mother and Father attended the hearing remotely, and both were represented by counsel.

By order entered that same day, the juvenile court adjudicated Child dependent and found aggravated circumstances as to Mother.[2] The court set the primary permanency goal as adoption and the concurrent permanency goal as reunification.[3]

On May 11, 2021 – approximately three weeks after the dependency adjudication – the juvenile court held a permanency review hearing. At the conclusion of the hearing, the court *sua sponte* changed the concurrent placement goal from reunification to placement in a SPLC. The court stated:

> I think to keep the concurrent goal reunification is a fantasy. It is just perpetuating a fantasy and taking taxpayer dollars for services that are simply unrealistic. So I am going to change the concurrent goal from reunification to SPLC. That of course takes care of the question of Mother's visits because then there is no reason for either parent to have visits and there is no reason for the agency to continue to provide services or attempt to provide services. ...

N.T., 5/11/21, at 22. The court permitted Father to complete a parenting capacity evaluation, "in case there is an appeal and I have to change the

---

[2] Aggravated circumstances include situations where "[t]he child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent." 42 Pa.C.S.A. § 6302. The finding of aggravated circumstances as to Mother effectively abrogated the Agency's obligation to employ reasonable efforts to reunify Child and Mother.

[3] Concurrent planning "is a dual-track system under which child welfare service agencies provide services to parents to enable their reunification with their children, while also planning for alternative permanent placement should reunification fail." *In re Adoption of S.E.G.*, 901 A.2d 1017, 1019 (Pa. 2006).

reunification back – or the concurrent goal back to reunification if the Superior Court were to disagree with me." *Id.* at 23.

On May 18, 2021, Father filed a timely notice of appeal and concise statement of errors from the April 19, 2021 order adjudicating Child dependent. The juvenile court filed its Pa.R.A.P. 1925(a) opinion on May 26, 2021.

While Father's appeal was pending, the Agency, on June 1, 2021, filed a petition to terminate Mother and Father's parental rights. On June 10, 2021, Father filed a second notice of appeal from the court's May 11, 2021 permanency review order, along with a concise statement of matters complained of on appeal. The juvenile court filed its Pa.R.A.P. 1925(a) opinion on June 15, 2021. On July 7, 2021, this Court consolidated Father's appeals *sua sponte*.

Father raises nine issues for review:

A. Did the trial court commit an abuse of discretion and error of law in finding that clear and convincing evidence existed to find the minor child dependent as to Father?

B. Did the trial court commit an abuse of discretion and error of law in allowing testimony regarding Father's criminal record, when that criminal record existed of offenses older than ten years, and as distant as thirty years?

C. Did the trial court commit an abuse of discretion and error of law in finding that Father's necessary use of a colostomy bag constituted clear and convincing evidence that his health prevented him from caring for the child?

D. Did the trial court commit an abuse of discretion and error of law in considering the relationship between Mother and Father as evidence of Father's unfitness as a parent?

E. Did the trial court commit an abuse of discretion and error of law in considering hearsay evidence and testimony regarding Father's alcohol abuse?

F. Did the trial court commit an abuse of discretion and error of law in finding that there had been no compliance by Father relative to the Permanency Plan at the May 11th Permanency Review?

G. Did the trial court commit an abuse of discretion and error of law in finding that Father had made no progress in alleviating the circumstances that led to Child's placement at the May 11th Permanency Review?

H. Did the trial court commit an abuse of discretion and error of law in changing the concurrent goal to placement with a Subsidized Permanent Legal Custodian at the May 11th Permanency Review?

I. Did the trial court committed an abuse of discretion and error of law in Ordering that the Agency was no longer required to provide reunification services to the family at the May 11th Permanency Review?

Father's Brief at 6-7.

In his first four issues, Father challenges the evidence relied on by the court in finding Child dependent. Father contends there was not clear and convincing evidence to support the adjudication, and the juvenile court erred in concluding Father's health, criminal record, and relationship with Mother prevented him from caring for Child. *Id.* at 12-17.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

- 6 -

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

Dependency matters are governed by the Juvenile Act. ***See In re E.B.***, 83 A.3d 426, 431 (Pa. Super. 2013); 42 Pa.C.S.A. § 6351(a). The Act defines a "dependent child" in part as a child who:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302; ***see also Matter of C.R.S.***, 696 A.2d 840, 845 (Pa. Super. 1997) (defining "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.").[4]

An adjudication of dependency must be supported by clear and convincing evidence. ***See In re G.T.***, 845 A.2d 870, 827 (Pa. Super. 2004). We have stated:

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

---

[4] Child was also adjudicated dependent under 42 Pa.C.S.A. § 6302(10), which pertains to a Child who "is born to a parent whose parental rights with regard to another child have been involuntarily terminated … within three years immediately preceding the date of birth of the child[.]" This provision applies only to Mother.

*Id.* at 873 (quotation marks and citations omitted); *see also A.N. v. A.N.*, 39 A.3d 326, 331 (Pa. Super. 2012) ("[I]t is not for this Court, but for the trial court as fact finder, to determine whether [a child's] removal from [his/]her family was clearly necessary.") (citation omitted). The determination "of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d 614, 619 (Pa. Super. 2002) (*en banc*).

Instantly, the Agency caseworker, Chelsea Rhoads, testified at the dependency hearing about the Agency's recommendation that Child be adjudicated dependent. Ms. Rhoads explained that Father and Mother reside together, and the Agency has "a grave concern that [Mother] is not safe for [Child]," and "even if [F]ather was reunified with the child, as long as [M]other is in the picture, the child would still be at risk." N.T., 4/19/21, at 14-15. Ms. Rhoads also testified that Father "struggle[d] with tending to the child's needs." *Id.* at 10. The Agency had to prompt Father to feed Child, and Father admitted he "was unaware how to make a bottle." *Id.* at 31-32. Ms. Rhoads also noted that Adult Protective Services was investigating alleged domestic violence between Mother and Father, but she did not know the outcome of the investigation. *Id.* at 15.

Ms. Rhoads' testimony, including her references to Father's cohabitation with Mother, allegations of domestic violence between Mother and Father, and Father's struggles in caring for Child, supports the juvenile court's dependency finding.[5]  **See** 42 Pa.C.S.A. § 6302 (a dependent Child "is without parental care or control").  Accordingly, we affirm the April 19, 2021 order adjudicating Child dependent.

Next, in his fifth issue, Father argues the juvenile court erred in "considering hearsay evidence and testimony regarding Father's alcohol abuse."  Father's Brief at 17.  Father contends Ms. Rhoads' testimony regarding his purported alcohol abuse was inadmissible hearsay.  Ms. Rhoads testified:

> The hospital reported that there was a history, that they were familiar with [Father] and [had] some drinking concerns, as [Mother] had been in the hospital on numerous occasions while pregnant, and during one of those visits, an empty bottle of liquor was left behind by the family.

N.T., 4/7/21, at 4-5.

This issue is waived.  In general, issues not preserved in the trial court cannot be raised on appeal.  Pa.R.A.P. 302(a).  To preserve an objection, a party must raise the objection and state a specific ground when it is raised.  **Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa. Super. 2003); Pa.R.E.

---

[5] Although Father argues the juvenile court improperly relied on his criminal record, the juvenile court stated it was "not paying attention to it.  It is too old."  N.T., 4/19/21, at 36.

- 9 -

103(a)(1). In addition, it is an appellant's duty to indicate where and how an issue and its supporting theory were preserved. *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008); Pa.R.A.P. 2117(c), 2119(e). Father does not cite, reference or otherwise indicate where he objected to Ms. Rhoads' testimony based on hearsay. Thus, we find waiver. *See* Pa.R.A.P. 302(a).

Father next challenges the juvenile court's findings and goal change from the May 11, 2021 permanency review hearing. We first address the court's decision to change the concurrent permanency goal from reunification to placement with a SPLC, as our resolution of the issue is dispositive of the others in this appeal.

Father asserts the juvenile court erred in changing Child's permanency goal from reunification to placement with a SPLC given that "a mere twenty-two days had passed since the minor child was found dependent, and [there was an] absence of aggravated circumstances as to Father." Father's Brief at 21. Father points out that neither the Agency nor the Guardian *Ad Litem* filed a motion for a finding of aggravated circumstances as to Father. Father further contends that in the absence of aggravated circumstances, the discontinuation of services conflicts with the Juvenile Act's objective of family preservation. In sum, he argues the juvenile court's decision to change Child's permanency goal was premature. We agree.

Agencies are required to make reasonable efforts to allow parents the opportunity to "work toward reunification with their dependent children[.]" **In re D.C.D.**, 105 A.3d 662, 675 (Pa. 2014). "By requiring only 'reasonable efforts' to reunify a family, the statute recognizes that there are practical limitations to such efforts." **In Interest of C.K.**, 165 A.3d 935, 942 (Pa. Super. 2017) (citation omitted). "It is not sufficient for the court to simply find that an action will promote family reunification; the court must also determine whether the action constitutes a reasonable effort towards reunification." **Id.** "Because the focus of the Juvenile Act is on the dependent child, as opposed to parents, any services for parents must directly promote the best interests of the child." **Id.**; **see also id.** at 944 ("Assisting parents with achieving the Juvenile Act's goal of family unity in a timely fashion ultimately benefits children, as it will result either in a successful safe reunification or a clearer picture of the parents' inability to remedy the conditions causing the child to be out of their care[.]").

At the May 11, 2021 permanency review hearing, the Agency presented testimony from Linda Tirado-Lopez, a drug and alcohol monitoring specialist with Families United Network. Ms. Tirado-Lopez testified there had been six attempts to perform an alcohol screen on Father since April 19, 2021, when Child was adjudicated dependent. Of the attempts, "[t]hree of those alcohol screens were negative and three [Father] was not available." N.T., 5/11/21, at 4. Ms. Tirado-Lopez said Father contacted her on the three occasions he

was unavailable; she recalled he was "out of the city – I believe he was in Philadelphia for work. Another time he was doing work as well." *Id.* at 5. Regarding the third missed screen, Ms. Tirado-Lopez testified Father "called me back a couple of hours later. I want to say that they were at the grocery store or something but by the time he called me it was too late for me to return to test him." *Id.*

Ms. Rhoads also testified. She noted that the juvenile court referred Father to Pressley Ridge for intensive family services. N.T., 5/11/21, at 10. Although Father initially expressed hesitation in receiving services from Pressley Ridge - after learning Mother would not be permitted to participate - he met with Pressley Ridge and was in the process of completing his intake. *Id.* at 9. Ms. Rhoads testified that Father is participating in weekly supervised visits with Child. Father has missed one visit since the dependency hearing, and Ms. Rhoads expressed concern with comments Father made to child. Ms. Rhoads stated, "sometimes [Father] forgets how young the child is and the milestones for that age." *Id.* at 8. She continued: "The only example I have is that he was asking the baby when is he going to start walking and talking. And at one point during the visit the baby was fussing and he told him he needed to stop crying several times." *Id.* at 11. Ms. Rhoads concluded:

> The agency would recommend that [Child] continue to be an adjudicated dependent and in his current placement. That [Mother] continue without services and not be included in any of [F]ather's visits going forward. And that [Father] would continue to work with all of the outlined services.

*Id.* at 12.

The juvenile court then asked Child's Guardian *Ad Litem*, Attorney Laura Smith, about her recommendation for Child's permanency goal. Ms. Smith stated, "We haven't had a lot of time since the last hearing." N.T., 5/11/21, at 21. She continued, "I know the agency is in the process of filing for a termination of parental rights anyways. So I know the case is going to move forward. I am not sure on his behalf if I have a strong position either way, it is more of what the agency is required – [.]" *Id.*

The juvenile court then remarked:

The problem I have … with [the] argument that I not change the concurrent goal, is simply the realistic assessment on the situation is that, quite frankly, there is virtually zero chance that Father is going to be able to do anything to make this reunification happen. His health is terrible. His anger problems, his alcohol problems, are both terrible. He has chosen to live with and soon to marry the mother, rather than pursue reunification.

I think to keep the concurrent goal reunification is a fantasy. It is just perpetuating a fantasy and taking taxpayers dollars for services that are simply unrealistic. So I am going to change the concurrent goal from reunification to Subsidized Permanent Legal Custodian. That of course takes care of the question of Mother's visits because then there is no reason for either parent to have visits and there is no reason for the agency to continue to provide services or attempt to provide services, since Father hasn't cooperated with any of them. He hasn't gotten any kind of report on his health. He hasn't engaged in any kind of evaluation for drugs or alcohol. He hasn't done anything.

So that is what is going to be in my order. …

N.T., 5/11/21, at 21-22.

Upon review, we are constrained to conclude that the evidence does not sustain the juvenile court's decision to terminate reunification efforts and change Child's concurrent permanency goal. It is undisputed that Father had been receiving services for – at most – 22 days, and acted affirmatively by getting alcohol screens, attending supervised visits with Child, and completing intake with Pressley Ridge family services.

Moreover, the juvenile court did not address Child's best interests. "Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'" *In the Interest of A.W.*, 162 A.3d 1117, 1120 (Pa. Super. 2017) (citing *In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009)). This Court has opined:

> Assisting parents with achieving the Juvenile Act's goal of family unity in a timely fashion ultimately benefits children, as it will result either in a successful safe reunification or a clearer picture of the parents' inability to remedy the conditions causing the child to be out of their care, requiring movement towards an alternate permanency goal.

*In re C.K.*, 165 A.3d at 944.

Consistent with the testimony presented at the permanency review hearing, we agree with Father that the juvenile court discounted the stated purpose of the Juvenile Act of promoting family unity, and prematurely concluded that "reunification is a fantasy." N.T., 5/11/21, at 22. Accordingly, we are constrained to find that the court abused its discretion in terminating reunification efforts and changing the concurrent placement goal to placement in a SPLC. *See In Interest of L.T.*, 158 A.3d at 1281-83 (concluding trial

- 14 -

court abused its discretion when it changed child's permanency goal from reunification to adoption after only two months of services where mother complied with services, regularly attended visitation, and had a bond with child); *see also In Interest of C.K.*, 165 A.2d at 942, 944.[6]

Dependency order entered April 19, 2021 affirmed. Order entered May 11, 2021 changing Child's concurrent permanency goal reversed. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2021

---

[6] Because we reverse the order changing Child's concurrent permanency goal from reunification to placement in a SPLC, we need not address Father's remaining issues.